FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 29, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THOMAS HOWELL,

       Plaintiff-Appellant,

v.

CENTRIC GROUP, LLC;
SCENTOILS.COM, INC.,

       Defendants-Appellees.

No. 12-1127
(D.C. No. 1:09-CV-02299-MSK-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

In this product-liability case, Thomas Howell appeals pro se from a final judgment entered in favor of Centric Group, LLC, and Scentoils.com, Inc., on the issue of causation. We have jurisdiction under 28 U.S.C. § 1291, and we affirm for substantially the same reasons identified by the district court.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Howell is a Colorado state prisoner who claims he was injured in 2006 by "anise oil" that he applied under his nose and which he had purchased from the prison's canteen service. R. at 533. Anise oil "is derived from organic plant materials." *Id.* at 318. A material safety data sheet (MSDS) states that the oil "may be irritating to skin and eyes," "vapor may be irritating to throat and lungs," "breathing high concentrations of vapor may cause anesthetic effects," and "repeated contact may cause allergic dermatitis." *Id.* at 155. A warning on the bottle purchased by Howell provides: "NOT FOR INTERNAL USE." *Id.* at 325.

Howell states that in order to cover up offensive odors in his cell, he rubbed the anise oil on the skin under his nose "many" times over "a few days" and then "excessively" on one particular night. *Id.* at 533. The next morning, he woke up with "pus and blood" under his nose. *Id.* at 534. A prison nurse commented that the injury "appears as 1st degree burn." *Id.* at 428. Roughly two weeks later, physician's assistant Theodore Laurence examined Howell and described the injury as "Rash and other nonspecific skin eruption—Probably chemical burn." *Id.* at 430.

Over time, Howell developed "a scar, loss of smell, and discoloration of a portion of [his] mustauche [sic] hair." *Id.* at 534. Seven months after the initial injury, physician's assistant Tejinder Singh examined Howell and reported: "0.5cm by 1cm scar just below the right nares. Patient informed the loss of smell due to

injury of specialized nerve tissue at the top [of his] nose[,] and his sense of smell may never come back." *Id.* at 436.

Howell sued the company that distributed the oil to the prison, Centric, and the company that sold it to Centric, Scentoils.com. The district court construed his complaint as invoking diversity jurisdiction and advancing four claims for relief: (1) negligence; (2) failure to warn; (3) negligence per se, and (4) strict product liability.

As to Centric's liability, both Centric and Howell moved for summary judgment. The district court concluded that all of Howell's claims failed because he failed to show that the anise oil was the specific cause of his injuries. The court noted that while the MSDS might alone be sufficient to show that anise oil could cause injury, there was no evidence to show "that the oil was the <u>actual</u> cause of his injury." R. at 698. Indeed, Howell admitted in his deposition that prior to using the anise oil, he "was using other oils," *id.* at 369, and that he had been dabbing oil on his upper lip "since the '90s," *id.* at 372. Thus, the court concluded that expert testimony was necessary to show that the anise oil, rather than something else, caused his injury. And the court rejected Howell's offer to use his medical providers as experts, as they had never opined that the anise oil caused his injuries.

Howell sought reconsideration, and both he and Scentoils.com moved for summary judgment on the latter's liability. The district court denied reconsideration, reiterating that Howell lacked any evidence showing that the anise oil was the

specific cause of his injuries. Regarding summary judgment, the court found the causation issue determinative, and it entered judgment for Scentoils.com.

Howell appeals.

## DISCUSSION[1]

Where, as here, the district court has ruled on cross-motions for summary judgment, we review its orders de novo, "constru[ing] all factual inferences in favor of the party against whom summary judgment was obtained." *NISH v. Rumsfeld*, 348 F.3d 1263, 1266 (10th Cir. 2003). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review a district court's denial of a Fed. R. Civ. P. 59(e) motion for reconsideration under an abuse of discretion standard," reversing only if the court "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010) (quotation omitted).

The crux of Howell's summary-judgment challenge is that "his medical documents are enough to show that . . . his treating physicians can testify at trial as to the likelihood or probability that defendants' conduct or product caused his injuries." Aplt. Opening Br. at 11. We disagree.

---

[1]     "Although we liberally construe pro se filings, we do not assume the role of advocate." *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quotation omitted).

- 4 -

Preliminarily, we note that causation is a necessary component of all Colorado product-liability claims. *See* Colo. Rev. Stat. § 13-21-401(2). And when such claims target allegedly toxic substances or pharmaceuticals, courts throughout the country routinely require plaintiffs to show both general and specific causation. *See, e.g.*, *Johnson v. Arkema, Inc.*, 685 F.3d 452, 457, 468-69 (5th Cir. 2012) (holding that exposure to vaporized "organometallic compound" not shown to be general cause of injury); *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005) (stating that "in silicone breast implant litigation, plaintiffs must show both general and specific causation"); *see generally* Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 28 (2010) ("The concepts of general causation and specific causation are widely accepted among courts confronting causation issues with toxic agents."). "General causation is whether a substance is capable of causing a particular injury or condition in the general population and specific causation is whether a substance caused a particular individual's injury." *Norris*, 397 F.3d at 881.

Even if we assume, as the district court did, that anise oil is capable of causing injuries similar to those Howell complained of, he has provided no evidence that the anise oil was the actual cause of those injuries. Indeed, Howell's own testimony shows that anise oil was not the only oil he has been applying under his nose. "[W]here an injury has multiple potential etiologies, expert testimony is necessary to establish causation." *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) (Jones Act case); *see also Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir.

- 5 -

2010) (rejecting expert's opinion that defendants' welding products caused plaintiff's Parkinson's disease because, among other things, expert provided only speculation to rule out other possible causes). Further, Howell's "treating physicians" appear to be the prison's nurse and two physician's assistants—none of whom have opined that anise oil caused his injuries.[2]

Because Howell failed to provide any evidence of specific causation, summary judgment was appropriate. *Cf. Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676-77 (6th Cir. 2011) (stating that toxic tort cases require expert scientific assessments concerning general and specific causation); *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 450 (8th Cir. 2010) (holding that expert testimony was required to show insecticide compound was the general and specific cause of a newborn's injuries). And given that he failed to remedy that deficiency in his Rule 59(e) motion, the district court acted within its discretion by denying reconsideration.

---

[2] Although Howell contends on appeal that "Dr. Beecroft" assisted the prison nurse and physician's assistants, Aplt. Opening Br. at 23, it does not appear that Dr. Beecroft has examined Howell regarding the injuries alleged in this litigation or provided any opinion as to the specific cause of those injuries.

**CONCLUSION**

The judgment of the district court is affirmed for substantially the same reasons identified in that court's September 27, 2011, and March 28, 2012, orders.

Entered for the Court


Wade Brorby
Senior Circuit Judge